IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIPPY ANTHONY LADNIER, JR.**                                          **PLAINTIFF**

**VERSUS**                                     **CIVIL ACTION NO. 1:22-cv-00167-RPM**

**TYRONE NELSON, et al.**                                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Plaintiff Kippy Anthony Ladnier, Jr., proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983 on July 5, 2022. [1] at 3; [5] at 1-2. Ladnier is housed at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi, and he names Captain Tyrone Nelson and Sheriff Mike Ezell as Defendants. [1] at 1-2. After an Omnibus Hearing,[1] Defendants filed a Motion [32] for Summary Judgment, to which Ladnier has not responded. For the following reasons, the Court finds that Defendants' Motion [32] for Summary Judgment should be granted and that Ladnier's claims against them should be dismissed with prejudice.

**I.    BACKGROUND**

**A.  Ladnier's Account of Events**

On the afternoon of June 19, 2022, Ladnier was using the telephone in the dayroom at JCADC. [1] at 4. He "was sitting on the stool that comes out of the wall," when suddenly "the stool broke at the base" and came "out of the wall." *Id*. Ladnier then "hit the floor real hard." *Id*. Ladnier claims that he injured his "back and head," *id*. at 5, and an "area just above [his] left hip,"

---

[1] The Court held an Omnibus Hearing on April 10, 2023, to give Ladnier a chance to clarify his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989). Citations to the Omnibus Hearing transcript are denoted "(Tr.)," and it is labeled Document 28 on the Court's docket.

(Tr. 8). Four other inmates, who each witnessed the fall, testified by affidavit that these events occurred as Ladnier reported them. [8-1] at 1-4.

Ladnier says that he immediately notified deputies and medical personnel about his injuries, (Tr. 8), but they "refused to do anything," [1] at 4. Specifically, another inmate "told the officer on duty through the wall mic," but "[m]edical never showed up." [8-1] at 3. Later, Ladnier says that he submitted a medical request on the kiosk, (Tr. 9), but he claims that he did not see a nurse until "about six or seven weeks later," (Tr. 11). At that time, he allegedly received ipuprofen "for about four days." (Tr. 14). By the Omnibus Hearing, Ladnier said he still experienced pain in his "whole right leg." (Tr. 15). He testified that his leg went "completely numb" when he tried to sit on the stools in the day room, and he "cannot sleep on that side either because it goes numb in the middle of the night." (Tr. 15).

Ladnier claims a violation of his Eighth and Fourteenth Amendment rights. [1] at 3. Ladnier sued Captain Nelson because "he is the head of the jail." (Tr. 16). But Ladnier testified that he never "communicated directly with Captain Nelson about [his] desire for medical treatment." (Tr. 18). Likewise, Ladnier sued Sheriff Ezell simply because he was Captain Nelson's boss. [7] at 1; (Tr. 16). He "never had any communication with Sheriff Ezell" either. (Tr. 32). He is not "suing [Captain] Nelson or [Sheriff] Ezell because the stool came loose from the wall," but simply for the alleged denial of medical care. (Tr. 22). Ladnier seeks $300,000.00 in compensatory damages for his "pain and suffering," and he wants his custodians to "get [him] to a doctor so [he] can be treated for [his] injuries." [1] at 5.

**B. Defendants' Summary Judgment Evidence**

Defendants submitted excerpts from Ladnier's medical records in support of their Motion

[32] for Summary Judgment. A nurse reported seeing Ladnier on June 22, 2022—three days after his fall. [32-2] at 1. Ladnier told her that he had "fallen in [the] floor when [the] stool broke," and that he now suffered "back pain and stiffness." *Id*. And Ladnier testified that he remembered having this conversation. (Tr. 24 ("I do remember discussing it with the nurse.")). The nurse offered Ladnier a course of anti-inflammatory medication, and he "agreed to pain medication and rest." [32-2] at 1. That day, Ladnier was prescribed two 200-milligram doses of ibuprofen daily for three days, specifically to treat his "back pain." *Id*. at 2. That order was renewed three days later, giving Ladnier another three-day course of twice-daily ibuprofen for "back pain." *Id*. at 3. Ladnier conceded at the Omnibus Hearing that "these . . . medicines . . . were given to [him] from the medical cart." (Tr. 29).

Ladnier complained about back and leg pain three more times over the next three months, and his prescription for pain medication was renewed three more times—for another seventeen days' worth of ibuprofen or acetaminophen. [32-2] at 4-8. Again, Ladnier conceded at the Omnibus Hearing that he received the medication ordered for him, but he complained that it was "for [a] different reason other than [his] back pain"—namely, his "bad sinuses and headaches." (Tr. 31).

During discovery, Ladnier was asked to "admit [that he] was seen by the medical department on October 18, 2022 for follow up on [his] hip and back pain." [32-4] at 2. He was asked to "admit that when [he was] seen by the medical department on October 18, 2022, [he] informed the nurse that the previous protocol had helped with [his] pain." *Id*. He was also asked to admit that a "nurse . . . educated [him] on massage and stretching for [his] . . . back pain" and that he was "prescribed Ibuprofen and [Acetaminophen] for an additional seven days" at this time. *Id*. Ladnier did not respond to these Requests for Admission. [33] at 12-13.

3

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Amerson v. Pike Cnty., Miss.*, No. 3:08-cv-00053-

DPJ-FKB, 2012 WL 968058, at *1 (S.D. Miss. Mar. 21, 2012).

## III.  DISCUSSION

Section 1983 creates a cause of action against those who violate a plaintiff's constitutional rights while acting under color of state law. 42 U.S.C. § 1983. Ladnier sued both Captain Nelson and Sheriff Ezell in their individual and official capacities, [1] at 2, which are discussed in turn below. In sum, Ladnier has failed to meet his burden to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *See Amerson*, 2012 WL 968058, at *6 (quotations omitted). Captain Nelson and Sheriff Ezell are entitled to judgment as a matter of law, and Ladnier's claims against them should be dismissed with prejudice.

### A.  Individual-Capacity Claims

Ladnier's individual-capacity claims fail because he has not shown that Captain Nelson and Sheriff Ezell were personally involved in the alleged constitutional violation. "There is no vicarious or *respondeat superior* liability of supervisors under [S]ection 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (emphasis in original). "Under [Section] 1983, . . . a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). That is, "[a] supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations omitted). "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id*.

(quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

At the Omnibus Hearing and elsewhere in the record, Ladnier expressly disclaimed the personal involvement of Captain Nelson and Sheriff Ezell in the events giving rise to this lawsuit. He never "communicated directly with Captain Nelson about [his] desire for medical treatment or the denial of medical treatment for [his] low[er] back." (Tr. 18). Nor did he have "any communication with Sheriff Ezell." (Tr. 32). He sued both Defendants simply because they were in positions of authority at JCADC. [7] at 1; (Tr. 16-18). That alone cannot support liability under § 1983. *E.g.*, *Weathers v. Cano*, 392 F. App'x 339, 341 (5th Cir. 2010) (affirming summary judgment where the evidence showed the officer was not personally involved in the alleged constitutional violation); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987) (holding the sheriff could not be liable for the failure of his subordinates to provide medical care); *Bates v. Amite Cnty., Miss.*, No. 3:11-cv-00368-DPJ-FKB, 2012 WL 1898928, at *3-4 (S.D. Miss. May 23, 2012) (granting summary judgment for sheriff who was not "personally involved" in the alleged constitutional violation).

And Ladnier does not claim that any unconstitutional policy at JCADC contributed to the alleged denial of medical care. Compared to his situation, he testified that "somebody [once] slipped and fell on some bleach that was spilled, [and] they called medical right away." (Tr. 19). Thus, Ladnier's testimony indicates that JCADC provides treatment to injured inmates as a general matter and that any denial of medical care to him was an isolated incident. Nor does Ladnier argue that Captain Nelson and Sheriff Ezell failed to train or supervise their subordinates. Ladnier's individual-capacity claims fail for these reasons too. *E.g.*, *Chapman v. Tucker*, No. 3:11-cv-00060-HTW-LRA, 2013 WL 5445285, *7 (S.D. Miss. Sept. 30, 2013) (dismissing claims against a sheriff

where the plaintiff failed to allege a "policy in place . . . that provides for inadequate care to detainees").

Moreover, Defendants' lack of personal involvement dooms Ladnier's deliberate-indifference claim. *See Amerson*, 2012 WL 968058, at *3 (recognizing that "the deliberate indifference standard presupposes some level of personal involvement by the defendant[s]"). But, even if Captain Nelson and Sheriff Ezell were personally involved in his medical care, Ladnier has failed to show that his ailments were treated with deliberate indifference.

"A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Deliberate indifference occurs when a defendant refuses to treat a plaintiff, ignores complaints, intentionally treats him or her incorrectly, or engages in conduct demonstrating 'a wanton disregard for any serious medical needs.'" *Amerson*, 2012 WL 968058, at *3 (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." *Id*. (quotations omitted).

Record evidence shows that Ladnier reported his injuries to a nurse within three days of his fall. [32-2] at 1. Immediately after their conversation (which he remembers having, (Tr. 24)), Ladnier received a six-day prescription for pain medication, *id*. at 2-3, and in fact received at least

7

five doses of pain medication during that week, [32-3] at 3-4. Over the next three months, Ladnier's prescription for pain medication was renewed three times—for a total of seventeen more days' worth of twice-daily pain medication. [32-2] at 5-6, 8. Ladnier in fact received more than 40 doses of pain medication between July and September 2022. [32-3] at 9-22. And Ladnier admitted at the Omnibus Hearing that he received the pain medication prescribed to him.[2] (Tr. 29, 31). Thus, Ladnier's "own testimony negates a finding" of deliberate indifference here. *See Turner v. Wexford Health Servs.*, No. 3:08-cv-00087-LRA, 2009 WL 2245683, at *3 (S.D. Miss. July 27, 2008) (granting summary judgment for defendants on a deliberate-indifference claim where the plaintiff's medical records showed that he received medical treatment).

At the Omnibus Hearing, Ladnier complained that he did not timely see a doctor, (Tr. 10-11), that he never received an x-ray of the affected area, (Tr. 28), and that his pain medication was administered to treat his sinuses and not just his back and hip injuries, (Tr. 31). Though he apparently did not receive an x-ray, a medical doctor agreed with the treating nurse's recommendation and signed five medication orders included in this record that "renewed [Ladnier's] pain medication." *See Estrada v. Nehls*, 524 F. Supp. 3d 578, 597 (S.D. Tex. 2021). Thus, Ladnier's allegations merely reflect "dissatisfaction or disagreement with the medical treatment he received, or that the treatment was negligent or the result of medical malpractice," which "does not state a claim for deliberate indifference to medical needs." *See id*. at 597-98

---

[2] Ladnier failed to respond to Defendants' requests for admission during discovery, so they are deemed admitted under Federal Rule of Civil Procedure 36(a)(3). Thus, Ladnier admits that he "was seen by the medical department on October 18, 2022 for follow up on [his] hip and back pain," and that he "informed the nurse that the previous protocol had helped with [his] pain." [32-4] at 2. Though his testimony at the Omnibus Hearing, along with the medical records, is enough to resolve this case, these admissions provide more evidence that Ladnier received medical treatment for his injuries. *See Love v. Marriott Intern., Inc.*, No. 3:11-cv-00314-CWR-LRA, 2013 WL 588155, at *1-2 (S.D. Miss. Feb. 11, 2013) (granting summary judgment for the defendants where the plaintiff failed to respond to requests for admission "concern[ing] the essential issues of a claim").

(dismissing claims against a doctor who "did not do x-rays" but "renewed [the plaintiff's] pain medication" instead).

Finally, Captain Nelson and Sheriff Ezell argue that they are entitled to qualified immunity from Ladnier's claims against them in their individual capacities. Mem. [33] at 5-7. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The bifurcated test for qualified immunity" asks "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonably in the light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). "If the alleged conduct did not violate a constitutional right, the inquiry ends because there is no constitutional violation for which the government official would need qualified immunity." *Est. of Parker v. Miss. Dep't of Pub. Safety*, No. 1:23-cv-00185-TBM-RPM, 2024 WL 1345699, at *7 (S.D. Miss. Mar. 29, 2024). Because Ladnier has failed to establish a constitutional violation, no talk of qualified immunity is necessary here.

Ladnier's individual-capacity claims against Captain Nelson and Sheriff Ezell fail as a matter of law and must be dismissed with prejudice.

### B. Official-Capacity Claims

Ladnier's official-capacity claims against Captain Nelson and Sheriff Ezell are actually claims against Jackson County, Mississippi. *See Stahl v. Jackson Cnty., Miss.*, No. 1:15-cv-00189-KS-MTP, 2015 WL 11019137, at *1 (S.D. Miss. Dec. 18, 2015) ("[S]uits against government

officials in their official capacity 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)). "It necessarily follows that, without an underlying constitutional violation, there can be no § 1983 liability imposed" against Jackson County. *See Becerra v. Asher*, 105 F.3d 1042, 1047-48 (5th Cir. 1997) (emphasis omitted). Because Ladnier has failed to establish a constitutional violation, his claims against Jackson County cannot succeed.

Even had Ladnier established a constitutional violation, he has failed to plead and establish the existence of municipal liability. "Municipal liability under [S]ection 1983 requires proof of three elements: a policymaker, an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Wilson v. Pearl River Cnty.*, No. 1:08-cv-01353-JMR, 2010 WL 235027, at *2 (S.D. Miss. Jan. 15, 2010) (quotation omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom." *Wilson*, 2010 WL 235027, at *3. In other words, "Congress did not intend municipalities to be held liable unless action pursuant to an official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

During the life of this case, Ladnier has not mentioned an official policy of Jackson County that caused the alleged constitutional violation. Nor has he shown a pattern or practice of Jackson County giving rise to the alleged constitutional violation. As discussed above, Ladnier testified that medical care is generally available to inmates who are injured while incarcerated at JCADC. (Tr. 19). Thus, the alleged denial of medical care that he suffered is an isolated incident for which Jackson County cannot be liable. Ladnier's official-capacity claims against Captain Nelson and

Sheriff Ezell also fail as a matter of law and must be dismissed with prejudice.

## IV.   CONCLUSION

Having thoroughly reviewed and liberally construed Ladnier's pleadings and testimony, along with the Motion [32] for Summary Judgment pending, the Court finds that Ladnier's claims against Captain Nelson and Sheriff Ezell should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' Motion [32] for Summary Judgment is **GRANTED**. Plaintiff Kippy Anthony Ladnier, Jr.'s claims against both Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this case is closed. A separate Final Judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 24th day of May, 2024.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE